UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO: _____

MYLINDA VIOLA,

       Plaintiff,

v.

CHARLOTTE'S WEB, INC.,

       Defendant.

_____/

## COMPLAINT

COMES NOW, Plaintiff, MYLINDA VIOLA ("VIOLA"), and files her Complaint against Defendant, CHARLOTTE'S WEB, INC. ("CWI"), for violation of the Equal Pay Act of 1963, as amended, 29 USC § 206(d) ("EPA") and for unpaid wages, and alleges as follows:

## JURISDICTION & VENUE

1.     This is an action brought to remedy unlawful employment practices pursuant to the EPA, and this Court has federal question and supplemental jurisdiction pursuant to 28 USC §§1331 and 1365.

2.     VIOLA *sui juris* and is a resident of this Court's jurisdiction.

1

3.      CWI is a company authorized to do business in the State of Florida and employed Plaintiff in this jurisdiction.

## FACTUAL ALLEGATIONS

*Initial Position and Job Offer:*

4.      CWI is a company that was founded by seven brothers, the Stanley Brothers, and is a publicly traded company that is in the business of providing whole-plant hemp health supplements from growth to manufacturing.

5.      VIOLA is a woman.

6.      VIOLA has a sought-after skillset with developing new business markets and was recruited to join CWI.

7.      On January 24, 2022, CWI employed VIOLA as its President of Strategic Partnerships & New Business Development.  See Offer of Employment attached as Exhibit "A".

8.      The position called for VIOLA to have duties to develop new global business opportunities.

*Pay Disparity:*

9.      At all relevant times, Jon Dunham's title was VP of Customer of Commercial Revenue.

10. In that role, Dunham's duties were to:

   a. Execute sales strategy;
   b. Hire and train sales, support, analysts, and service teams;
   c. Manage and train the sales team, and provide motivation and support;
   d. Work with Supply Chain to manage sales operations and interdepartmental communication;
   e. Work and coordinate with Marketing to support sales efforts and overall company branding;
   f. Work with Finance on budgets, P&L; and
   g. Work with HR w/ regard to overall company education and culture.

11. After one month after joining CWI, she was told that Dunham was not performing well and that she would take over his duties.

12. As a result, CWI released an organizational chart that had all of Dunham's direct reports now reporting to VIOLA.

13. In addition to that, CWI had Dunham reporting to VIOLA for a short period of time. During the time Dunham reported to VIOLA, he was on leave.

14. Dunham resigned on or about the first week of April 2022.

15. Thereafter, VIOLA had all of her duties as the President of Strategic Partnerships & New Business Development and took over all of Dunham's duties.

16. VIOLA performed the same or substantially the same job duties and/or job requirements as Dunham, her male counterpart.

17.     Nevertheless, at all relevant times, VIOLA's base salary was approximately $87,000 less than her male counterparts who performed the same or substantially the same job duties—Jon Dunham.

***Underpayment of Q3 Commission:***

18.     CWI provided VIOLA with a "Commission Plan" dated July of 2022, but which CWI actually prepared on or about October of 2022 and backdated to appear that it was dated July of 2022.

19.     At any rate, pursuant to the backdated Commission Plan, CWI purportedly paid VIOLA quarterly commissions of $11,546.19 for the Third Quarter.

20.     Upon information and belief, CWI has not paid VIOLA her full 6% Quarterly Commission payment for the Third Quarter.

21.     Thus, she is owed the difference owed on the Third Quarter Commission payment, which VIOLA believes to be an additional 4% in commission.

***Unpaid Q1, Q2 and Q4 Quarterly Commissions:***

22.     VIOLA is entitled to quarterly commissions of 6% of new business. *See* Exhibit "B".

4

23.     Upon information and belief, CWI had revenues for new business in the approximate amount of $1.6M net.

24.     CWI has failed to pay VIOLA her First, Second, and Fourth Quarter Commissions.

***Unpaid Short Term Incentive Payment:***

25.     As part of her compensation above her base salary, VIOLA is entitled to her payments under the 2022 Short Term Incentive Plan.

26.     To date, CWI has failed to pay her those Short-Term Incentive payments.

## CONDITIONS PRECEDENT

27.     All conditions precedent has been satisfied or have been waived.

## ATTORNEYS' FEES

28.     Plaintiff has retained the undersigned counsel and has agreed to pay reasonable fees.

## COUNT I- VIOLATION OF EPA

29.     Plaintiff repeats and realleges allegations made in paragraph 1 through 28 of this Complaint.

30.     As a woman, VIOLA is a member of a protected category.

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE107|PLANTATION, FL 33324 | T: 954.606.5891 | F: 877.464.7316

31.    VIOLA performed the same or substantially the same job duties as her male counterpart—Jon Dunham.

32.    At all relevant times, VIOLA was paid and/or compensated less than her male counterpart, including Jon Dunham, despite performing the same or substantially the same job duties.

33.    Moreover, VIOLA was more qualified than Dunham since she had a sales background, whereas he did not.

34.    CWI knew or should have known that its failure to pay VIOLA equal pay for equal work was a willful, reckless, and a contumacious violation of the EPA.

35.    Plaintiff has suffered damages as a result of the EPA violations.

36.    VIOLA is entitled to reasonable attorneys' fees and costs in the event she prevails in this claim pursuant to 42 USC § 1981.

WHEREFORE, as to Count I, Plaintiff, MYLINDA VIOLA, respectfully requests that this Court grant judgment in her favor and against Defendant, CWI, and award damages, liquidated damages, interest, attorneys' fees pursuant to 29 USC § 216, costs and such other further relief that this Court deems just, equitable, and reasonable.

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE 107 | PLANTATION, FL 33324 | T: 954.606.5891 | F: 877.464.7316

## COUNT II- UNPAID WAGES

37.    Plaintiff repeats and realleges allegations made in paragraph 1 through 28 of this Complaint.

38.    CWI has failed to pay VIOLA the full amount owed for her Quarterly Commissions for the Third Quarter of 2022.

39.    CWI has completely failed to pay VIOLA her Quarterly Commissions for the First, Second and Fourth Quarter of 2022.

40.    As a result of CWI's failure to pay VIOLA her commissions, she has suffered damages.

WHEREFORE, as to Count II, Plaintiff, MYLINDA VIOLA, respectfully requests that this Court grant judgment in her favor and against Defendant, CWI, and award damages, interest, attorneys' fees pursuant to Fla. Stat. §448.08, costs and such other further relief that this Court deems just, equitable, and reasonable.

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE107|PLANTATION, FL 33324 | T: 954.606.5891 | F: 877.464.7316

## JURY TRIAL DEMAND

Plaintiff, MYLINDA VIOLA, demands a trial by jury on all issues so triable.

Dated: April 21, 2023                    Respectfully submitted,

                                         /s/ Gina Cadogan
                                         GINA M. CADOGAN, Esq. (FBN: 177350)
                                         CADOGAN LAW
                                         300 S. Pine Island Road, Ste. 107
                                         Plantation, FL 33324
                                         Tel: 954.606.5891
                                         Fax: 877.464.7316
                                         Email Address: gina@cadoganlaw.com
                                         Email Address: kathy@cadoganlaw.com
                                         Email Address: tyler@cadoganlaw.com

8

# EXHIBIT A



January 17, 2022

Mylinda Viola
Sent Via Email

Re:      Offer of Employment


Dear Mylinda:

Charlotte's Web, Inc. ("Company") is pleased to extend to you this conditional offer of employment to work in the full-time position of President Global New Business Development and Partnerships. This offer and your employment relationship will be subject to the terms and conditions of this letter. This offer is contingent upon completion, to the Company's satisfaction, of efforts to confirm your suitability for this position, which includes the pre-employment checks and reviews as described in this letter.

This position is exempt and reports directly to Jacques Tortoroli, Chief Executive Officer. Your start date will be January 24, 2022, following formal acceptance of this offer. This employment arrangement is intended for one year from your start date and may be extended or terminated prior to one year.

<u>Compensation and Benefits</u>
Base Compensation: Should you decide to accept this offer, your initial annualized base salary will be $200,000, with installments generally payable every other Thursday, or sooner as determined by state law. Your salary may be adjusted from time to time, including through increases, at the Company's sole discretion.

We are also excited to include you in our quarterly commission program contingent on a minimum revenue target.

Long-Term Incentive Program: You will be eligible to participate in the Company's long-term incentive program on similar terms and conditions as other similarly situated executives. Your target equity incentive opportunity will be 75% of your base salary and the equity award will consist of 50% stock options and 50% restricted stock awards. Each award will vest on a three-year vesting schedule with 33% of the value of each award vesting on each anniversary date.

Additional equity may be issued to you based on quantifiably exceeding target performance.

Equity Grant: You will receive an equity award of $300,000 in restricted stock units that will vest after one year.

1.

The Compensation Committee of the Board of Directors reserves the right to adjust or amend any Company incentive plans at their sole discretion.

Flexible Vacation Policy: As an exempt employee, you will be eligible to participate in Charlotte's Web's Flexible Vacation Policy. Under this policy, you will not accrue paid vacation time but will be awarded the flexibility to take time off from your regular work schedule, with full pay, and no effect to benefit eligibility. Paid time off under this policy is intended for vacation or other compelling reasons and is not intended for certain types of leave outlined under Exceptions in the written policy.

Benefits: You will be entitled to participate in the Company's employee benefit plans and arrangements on the same terms and conditions as other similarly situated employees. Enclosed with this offer letter, you will find a benefits enrollment packet offered by the Company and copies of summaries of the employee benefit plans in which you may be eligible to participate. Your eligibility to participate in any employee benefits plans and the terms of your participation will be governed by the governing plan documents and nothing in this letter can modify those provisions of the plans. For additional information regarding the Company's employee benefit plans, you may contact HumanResources@charlottesweb.com.

Tax and Other Withholding: The amounts of compensation described in this letter are before taxation or other withholdings required or permitted by law. The Company reserves the right to withhold all applicable federal, state, and local income, Social Security, and other employment taxes, along with any other amounts of required withholding, from all amounts of compensation and other remuneration payable to you, whether as direct compensation or pursuant to any of the compensation or benefit plans in which you may participate.

Transition Expenses: You will be reimbursed for up to $3,000 per month for expenses and travel to and from your current home in Tampa Bay, Florida.

Guidelines for Employment

If you accept this offer and become an employee of the Company, you will be subject to our employment policies. In addition, the Company reserves the right to modify the compensation or benefits arrangements described in this letter or otherwise maintained by the Company and reserves the right to modify your position or duties to meet business needs and to use its discretion in deciding on appropriate discipline. Upon hire, you will be required to read and sign an acknowledgment of receipt of the Employee Handbook and any applicable state supplement.

The Company is an at-will employer. At-will means that an employee may resign at any time with or without advance notice to the Company and with or without cause. Likewise, the Company may terminate an employee at any time with or without advance notice and with or without cause. Except for the Chairman of the Board or the Chairman of the Board's authorized representative, no director, manager, supervisor, or representative of the Company has any authority to enter into any agreement for employment for any specific period of time or to make any agreement contrary to the

foregoing. Only the Chairman of the Board of the Company or the Chairman of the Board's authorized representative has the authority to make any agreement contrary to the foregoing and then only in writing. Nothing in this letter should be read to alter the at-will nature of your anticipated employment with the Company.

Offer Contingencies
This offer is contingent upon the following:

- Successful completion of a background check.
- Signing the Company's Employee Confidential Information and Inventions Assignment Agreement (CIIAA) **[completed via Paycom Onboarding]**.
- Verification of the information contained in your employment application, including satisfactory results in the verification of references.
- Confirmation that you are not subject to any legal restrictions on your activities (see below); and
- Accepting this offer electronically or in writing within two business days of receipt of the written offer.

This offer will be withdrawn (whether or not you have already signed it) if any of the above conditions are not satisfied. Unless and until all such steps have been completed, this conditional offer of employment may be withdrawn and you should not resign your current employment, otherwise, alter your employment status, or alter any personal circumstances in reliance on this conditional offer.

In addition, on your first day of employment, please be sure to bring your identification card(s) to establish your identity and eligibility for employment in the United States, e.g., unexpired passport or driver's license and social security card. If you are unable to provide such verification within three business days of the date your employment begins, this offer of employment will be withdrawn.

This letter, including the enclosed CIIAA, constitutes the entire agreement between you and the Company relating to this subject matter and supersedes all prior or contemporaneous agreements, understandings, negotiations, or representations, whether oral or written, express or implied, on this subject. Except as provided herein, this letter may not be modified or amended except by the Company's Chairman of the Board or Chairman of the Board's authorized representative.

Restrictions on Employment
By signing this offer letter, you represent and warrant that you are not a party to any agreement or subject to any policy applicable to you that would prevent or restrict you from engaging in activities competitive with the activities of your former employer or from directly or indirectly soliciting any employee, client or customer to leave the employ of, or transfer its business away from, your former employer, or if you are subject to such an agreement or policy, you have complied and will comply with it, and your employment with the Company does not violate any such agreement or policy. You further confirm that you will not remove or take any documents or proprietary data or materials of any kind, electronic or otherwise, with you from your current or former employer to the Company without written authorization from your current or former employer. If you have any questions about the ownership of particular documents or other information, discuss such questions with your former employer before removing or copying the documents or information.

3.

Acceptance

This offer will remain open until the close of business on January 31, 2022. To indicate your acceptance of the Company's offer on the terms and conditions set forth in this letter, please sign and date this letter in the space provided below and return it to me no later than that date. Upon receipt of your signed acceptance of this offer letter, HR will contact you to begin your onboarding process.

We hope your employment with the Company will prove mutually rewarding, and we look forward to having you join us.

Sincerely,



Jacques Tortoroli
CEO
Charlotte's Web, Inc.


Cc:  Mindy Garrison, Head of Human Resources


*       *       *

---

By signing below, I acknowledge that I have been furnished with a copy of this position change offer letter and that I understand and agree to the terms set forth above. I understand that I will be an at-will employee and that nothing in this document is intended to create a contract of employment or alter the at-will nature of my employment.

---

Acknowledgment and Acceptance of Terms:

| _Mylinda Viola_ | Mylinda Viola | 1/17/22 |
|---|---|---|
| Signature | Print Name | Date |

# EXHIBIT B



# Commission Plan
# Overview

Established:
7/1/2022

# CONFIDENTIAL

I.    **Important Information**





## II.    Purpose



## III.     Objectives

The objectives of the Plan are to:

• Align commissions with the Company's net revenue goals to incentivize the attainment of key targets;

• Employees share in the success of the business when net revenue goals are met or exceeded;

• Help attract and retain outstanding talent; and

• Develop and support a culture of performance, collaboration, and commitment to success.

## IV.    Effective Date

This Plan is effective July 1st, 2022, and covers the period from July 1st through December 31st (the "Plan Period") and January 1st through December 31st in the following years.



## V.    Eligibility

██████████████████████████████  ████
█
 ██ █████████████████████████████  ████
  ████████████████████████████
              ████████████████
██████████████████████████  ████████
    █████████████████  ████
     █████████████████████████████
 █ ████████████████████████  ███████████████
 █ █████████████████████████████████
  █████████████████████████████████████████
 █ █████████████████████████████████████
    ████████████████████████████

█████████████████████████████████
█████████████████████████████████████
█████████████████████████
████████████

## VI.    Payment of Commissions

████████████████████████████████████████. Commission payments under
this plan will be payable on a quarterly basis no later than 60 days after the
quarter ends for new accounts and annually for growth on existing accounts.
█████████████████████████████████████████████
████████████████████████████████

## VII.    New Hires



## VIII.    Termination of Employment



## IX.    Leaves of Absence



## X.    Long-Term Disability and Death



## XI.    Loans, Advances, or Draws



## XII.    Plan Administration & Miscellaneous Information



**EXHIBIT A | Commission Structure**

I.    **Commission Structure Details for National Partnership Directors**

- ████████████████████████████████
  █ employee will receive a 2% percent commission on the growth amount to existing accounts.
- If a new account is ██████████████████████████
  █ 6% percent commission on the new account for the quarter and for up to 12 months.
- ████████████████████████████████



- l.
- If the department achieves the stretch goal of

## II.  Direct Sales –  Commission Structure Details for VP National Partnerships, VP Distribution, and President of National Partnerships



- s.
- If a new account is created ... eive a 6% percent commission
- ... chieves the stretch goal of

## III.  Indirect Sales – Commission Structure Details for VP National Partnerships, VP Distribution, and President of National Partnerships



- If  a 1% percent commission on net revenue above the annual quota.
- If a new account is created with Charlotte's Web. the employee will receive a 2% percent commission



